**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DISTRICT**

| | |
|---|---|
| JUDE HUTCHINGS<br>KAI HUTCHINGS,<br>     *Plaintiffs,*<br>  v.<br><br>BARNES & NOBLE BOOKSELLERS, INC.,<br>     *Defendant.* | CIVIL ACTION NO.:_____<br><br><br><br>JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

## I.    PRELIMINARY STATEMENT

1.      This is an action under Title VII of the Civil Rights Act of 1964, as amended by Title I of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, et seq. ("ADA"), Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA"), and Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA").

2.      Plaintiff Jude Hutchings experienced escalating and unrelenting discrimination and harassment because of sex, gender, gender identity, gender expression, and disability by the employees and managers of Defendant Barnes & Noble Booksellers, Inc., as set forth below.

3.      Plaintiff Jude Hutchings was retaliated against for his protected activities under Title VII, ADA, ERISA, and FMLA by Defendant.

4.      Plaintiff Jude Hutchings suffered unlawful interference of benefits under 29 U.S.C. § 2601, *et seq.*, and retaliation and interference of benefits under 29 U.S.C. § 1140 *et seq.*

5.      Plaintiff Kai Hutchings suffered unlawful interference of benefits under 29 U.S.C. § 1001, *et seq*. and 29 U.S.C. § 1140 *et seq.*

## II.    PARTIES

1

6.      Plaintiff Jude Hutchings is an individual who resides in Salt Lake County, Utah, and a former employee of Defendant; his job title at the time of termination was Assistant Store Manager. He was continuously employed by Defendant from August 24, 2014, at until November 19, 2019, when he was fired at The Woodlands. Mr. Hutchings met the definition of an "employee" under all applicable statutes.

7.      Plaintiff Kai Hutchings is an individual who resides in Salt Lake County, Utah, and married to Plaintiff Jude Hutchings; Kai meets the definition as a beneficiary under all applicable statutes and had covered medical coverage as a domestic partner under Defendant's medical plan.

8.      Defendant is a corporation registered in the state of Delaware with a principal place of business at 122 5th Avenue, New York, New York, 10011. On or about June 7, 2019, Defendant was acquired for about $475 million by Elliott Management Corporation (a hedge fund investment firm) registered in the state of Delaware, with a principal place of business at 40 West 57th Street, 4th floor, New York, NY, 10019. Elliott Management takes an activist approach to investing, amassing significant but minority stakes in distressed or underperforming companies.

9.      Defendant had 200 or more employees during the relevant time period.

10.     Defendant met the definition of "employer" under all applicable statutes.

11.     Plaintiff Jude Hutchings worked at the Defendant retail store located in Montgomery County, Texas, at 1201 Lake Woodlands Drive Suite #3008, The Woodlands, Texas 77381 ("Store 2200").

## III.    JURISDICTION AND VENUE

12.     This Court has original jurisdiction over matters pursuant to federal question jurisdiction, 28 U.S.C. § 1331, because this action is based on discrimination because of sex,

harassment, and retaliation, in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., discrimination and retaliation because of disability in violation of ADA, 42 U.S.C. §12101, *et seq*., retaliation and interference of FMLA, 29 U.S.C. § 2601, *et seq.*, and retaliation and interference of benefits under ERISA, 29 U.S.C. § 1140 *et seq.*

13.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is conducting business in Montgomery County, Texas, and a substantial portion of the unlawful employment practices occurred primarily in Montgomery County, Texas, within the United States District Court for the Southern District of Texas.

## IV.     PROCEDURAL REQUISITES

14.     Within 300 days of the occurrence of the acts complained of, Plaintiff Jude Hutchings filed his initial complaint with the United States Equal Opportunity Commission (EEOC), alleging that the Defendant had committed unlawful employment practices against the Plaintiff.  The formal charge was filed on June 19, 2020.

15.     On June 24, 2021, Plaintiff received a letter from the EEOC. The Plaintiff's Dismissal and Notice of Rights letter granted Plaintiff to right to file this lawsuit within ninety (90) days of its receipt. A copy of this notice is attached as Exhibit "A" and is incorporated for all purposes by reference. Plaintiff's statutory claims were filed within ninety days of its receipt. All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

## V.     FACTUAL ALLEGATIONS

16.     In 2006, Plaintiff Jude Hutchings began employment with Defendant at a retail store in Utah; he worked in various part time roles at three Utah locations. He remained employed

by Defendant for ten of the thirteen years between 2006 and 2019. In the summer of 2016, Plaintiffs moved from Utah to a suburb of Houston, Texas. Plaintiff Jude Hutchings transferred his employment to The Woodlands where he remained employed until November 19, 2019.

17.     Unlike a collaborative work atmosphere in Utah, upstream feedback with management in Texas was not always welcomed. For example, Jude expressed worry and escalated dangerous conditions at Store 2200's unloading dock. When concerns were ignored, he was reprimanded after he escalated beyond the store manager, which attracted upstream scrutiny from leadership. Eventually an employee was injured in the same location that he warned management of. Management expressed accommodations were challenging to deal with, a hassle, and burdensome to the business in terms of scheduling and accommodating the calendar. Themes such as these foreshadowed what was to become when Plaintiff Jude Hutchings was in need of accommodations and time off.

18.     In October 2017, Plaintiff Jude Hutchings informed B&N that he is a transgender man. A transgender person is someone whose sex assigned at birth, as determined by the appearance of external sex characteristics, does not match that person's gender identity (a person's internal sense of being male or female). For a transgender person, their external characteristics and internal perception of sex do not match. Transgender people often experience gender dysphoria. Gender dysphoria ("GD") is a formal diagnosis to describe people who experience significant distress with the sex they were assigned at birth. GD is found in the *Diagnostic and Statistical Manual of Mental Disorders* of the American Psychiatric Association (DSM-5).

19.     On October 23, 2017, Plaintiff Jude Hutchings notified Defendant that he was starting hormone therapy and called Defendant's Human Resources ("HR") support line, to begin the process of seeking benefits under the company's transgender-inclusive medical benefits plan. The HR representative referred him to Regional HR Director, Joe Walter Case ("Mr. Case") and expressed positive encouragement since he apparently had much experience handling sensitive people management matters for transgender employees. Mr. Case was responsible for approximately 4,000 employees that fell under his responsibility. Mr. Hutchings trusted that Mr.

4

Case would lead by example, exercise care, and be sensitive to his medical needs and accommodations. On or about October 30, 2017, Jude spoke with Joe Case and Mike Usry, District Manager.

20.     On January 24, 2018, Plaintiff Jude Hutchings became an unfortunate statistic of violence at Store 2200 when he was verbally accosted and attacked by a visitor. Jude attempted to disengage from the visitor, but his main means of exit was blocked by the visitor's physical presence. The visitor expressed that he was going to be the one to teach Jude a lesson. The visitor made aggressive moves by taking an aggressive step towards Jude and yelled in Jude's face. Jude became extremely fearful since transgender people are at significantly higher risk of violence, according to the 2015 Survey of the National Center of Transgender Equality.[1] Another employee made efforts to intervene by creating a diversion to help Jude escape and disengage from the visitor's attack. Jude was so disturbed and scared that he reported the situation to the Manager on Duty (MOD) and later described the attack as abuse and akin to battery, as if the visitor physically hit him.

21.     The MOD, a seasoned employee, confronted the visitor and referred to Jude as "she." The visitor perceived Jude to be a "he." The visitor became irate as the MOD and visitor's perception of Jude's gender was not aligned. The interaction escalated and the MOD asked the visitor to leave for the day. The visitor re-iterated that he did not speak to a "she." The MOD told the visitor that "gender was not the issue, here" which caused the visitor to sneer in disgust and laugh. The MOD asked the visitor to leave, or the police would be called.

22.     The MOD dialed 911 for assistance regarding safety concerns, and Montgomery County Police arrived, and the visitor signed a Criminal Trespass Notice.  In the days that followed, the MOD said Jude "looks like a 'she.'" Jude's physical appearance mismatched gender stereotypes (His hair was cut very short, his face featured some facial hair, his body featured more muscle

---

[1] James, S. E., Herman, J. L., Rankin, S., Keisling, M., Mottet, L., & Anafi, M. (2016). The Report of the 2015 U.S. Transgender Survey. Washington, DC: National Center for Transgender Equality.

mass, a stronger and more muscular jawline, a thick neck. He wore pants, jackets, or long-sleeved button-down collared shirts that are not low-cut).

23.     Store Manager, Michael Dunworth, acknowledged that Jude was assaulted. Despite this, Mr. Dunworth contacted the visitor, apologized, and cancelled the notice of trespass. Mr. Dunworth met with Mr. Hutchings and instructed him to steer clear or keep distance if the visitor returned or otherwise came back to Store 2200. After Mr. Hutchings concluded his shift, he contacted the company hotline, WeListen, to report the situation was being mishandled and felt unsupported. He initiated a verbal complaint regarding disparate treatment since "Male Managers and Male Employees" received preferential treatment compared to employees whose sex is female. Jude elaborated that management acted aggressively and talked down to employees of the female sex.

24.     On January 30, 2018, Plaintiff Jude Hutchings emailed Mr. Case and asked him to travel to Store 2200 to conduct a critical meeting regarding his name and gender change. Mr. Case asked whether another manager could handle the matter but Mr. Hutchings insisted that Mr. Case to lead the meeting. The meeting was arranged for March.

25.     On March 9, 2018, Mr. Case sent an email with a subject line "Consent to Inform." Jude replied to the email and granted limited permission to discuss his gender transition for a management meeting for March 12, 2018. Jude granted permission to only discuss his (1) name and (2) gender change.

26.     On March 12, 2018, Michael Dunworth began conducting a meeting with various members of management. Mr. Dunworth exceeded the scope when he disclosed that Jude was going through a "regiment of injections and things like that." Mr. Dunworth did not have permission to disclose apparent methods of administering prescription medicine into Jude's body.

27.     Mr. Case informed the attendees that the appropriate pronoun for Jude is "he" and that employees needed to refer to him by his name, "Jude." Mr. Case told employees that ongoing misuse of Jude's name or pronouns is not acceptable. Ironically, Mr. Case and Mr. Dunworth collectively used the wrong pronoun at least a dozen occasions. Jude suffered the brunt of

unwelcome conduct, chronic name and gender misuse, which created an offensive environment for him; the misuse lasted from 2018 through 2019 and into the days leading to his sudden termination. Such misgendering and misnaming caused much shame and embarrassment, since he was being treated differently than others who were not being chronically misnamed or misgendered.

28.     During the March 12, 2018, meeting, an employee arrived but was unable to enter the building and knocked on the glass door or window. After waiting for several minutes outside, the door was unlocked, and the employee was granted access into the store.

29.     Mr. Case and Mr. Dunworth delegated compliance training assignments to the managers to communicate Plaintiff's change to several dozen lower-level employees. Mr. Case and Mr. Dunworth did not to require the same compliance program to be completed by dozens of junior employees.

30.     In the months that followed, Plaintiff Jude Hutchings notified HR that he was seeking medical leave. Plaintiffs traveled to Austin, Texas, to take further steps to legally change his name and gender identifiers. On June 18, 2018, a Travis County, Texas, court order D-1-FM-18-003518, changed his name and gender identifier. A copy was requested from the court, and on by July 19, 2018, a digital copy was supplied to Defendant's H.R. department via email. Senior Change Management Specialist, Kristina Controneo, confirmed receipt of the order but expressed bad news. The company refused to comply with perhaps the most important aspect of the court order: the section pertaining to his name.

31.     Mr. Hutchings expressed to management that the constant errors by employees made him feel very uncomfortable and that he was constantly under the spotlight when employees made mistakes in front of others. Chronic errors were rationalized as part of the process and not much could be done.

32.     Each time someone misused Jude's name or pronoun, Mr. Hutchings felt a painful reminder that others, including his employer – all the way up to the legal department - failed to

see him for who he is. Employees continued to refer to Plaintiff Jude Hutchings' gender as female, causing much distress and embarrassment and feel isolated and alone.

33.     Finally, on March 27, 2019, Defendant updated Jude's name in the corporate record after receiving confirmation that his social security number was updated with other administrative agencies, and a copy of the SSN card was supplied to Defendant's HR department.

34.     On May 1, 2019, then Store Manager, Daniel Karnatz, sent a disturbing photograph via text message to Jude. The picture was a hate symbol – a swastika – that was reportedly carved into company property by another employee. Jude felt offended, increasingly fearful, anxious, scared, and on edge regarding the hateful culture and toxic environment at work. This was deeply disturbing since a swastika is a hate symbol that conveys a message of extreme suffering and violence. Mr. Karnatz noted that the discipline would be a "Final IP." Even under such extreme circumstances, Defendant's established protocol is to issue written formal discipline documented through IP.

35.     Around the same time, the first quarter of the fiscal year, a new policy went into effect; the policy was communicated to company emails including store2200@bn.com or MGR2200@bn.com or M2200@bn.com. Jude read the notification and had concerns that the policy may put a target on his back since the Hutchings were on the cusp of more extensive treatments for gender-affirming care for GD that would require more extensive time off and accommodations for recovery. About a month later, in June 2019, Defendant publicly announced that the company was acquired by a hedge fund.

36.     On August 19, 2019, Jude submitted a time off request scheduled for November 20, 2019 (1 day before he was ultimately fired). In the comments box, he wrote "Doctor appointment" to follow up with his doctor for ongoing GD care.

37.     In late September 2019, Jude was confronted by Café Server, Kimberly Christine Segura ("Kim Segura") at closing time. Kim Segura asked what it was like to be born female while gender identity is male. Kim Segura elaborated that she was writing a paper for school, in her efforts to become a schoolteacher or educator. Jude was completely taken off guard for several

reasons. Ms. Segura, was hired *after* Jude's name and gender transition. In other words, Ms. Segura and other employees hired after March 13, 2018, should not have known Jude's sex at birth or prior gender identity as female.

38.     Jude asked for the identities of those who outed him as transgender, in which Ms. Segura replied that he was a topic of conversation with the boys and it was "one of the boys" who disclosed that Jude's sex is female. Jude abruptly ended the conversation and told Ms. Segura that he felt extremely uncomfortable. Ms. Segura issued a verbal apology; Jude sternly expressed that it was not ok. In the moments that followed, Jude closed the store, and headed towards his vehicle where he suffered a panic attack.

39.     The following morning, Mr. Hutchings suffered a second panic attack when he traveled to work. Jude reported the situation to Daniel Karnatz, the Store Manager at the time. Mr. Karnatz responded in a dehumanizing manner, "What do you want me to do about it, Jude? Stop people from talking?" Mr. Karnatz had a compulsory obligation to report the harassment but failed to do so.

40.     On October 19, 2019, Mr. Hutchings sent an introduction text message to Daniel Boles, a Store Manager. Mr. Boles was splitting his time between two stores, including Store 2200. On or about November 12, 2019, Mr. Boles expressed that Jude was on the "fast track" for a promotion to become a Store Manager.

41.     On November 7, 2019, Mr. Hutchings was pre-approved for gender-affirming surgeries; the pre-approval process took well over a year to satisfy the long list of eligibility requirements set for by Defendant. The hard copy pre-approval letter was mailed and delivered on or about November 11, 2019.

42.     On November 13, 2019, at about 10:55 PM, Plaintiff submitted another request for time off. This time, instead of a single day off, it was scheduled for (9 days). In the time off request comments box, it reads "Medical care in Austin with my husband." Mr. Hutchings followed Defendant's policy regarding advanced notice requirements for time off.

43.     The following morning, November 14, 2019, Mr. Hutchings arrived late to his shift. At about 8:45 a.m., he began conducting a morning meeting on the sales floor; three other employees were present. Near the conclusion of the meeting, Mary Fae Dumas ("Mary Dumas"), Bookseller, attempted to enter the building through the café entrance but arrived late. Because the door to the building was locked, she was unable to enter the building immediately.

44.     There is no policy or written protocol that requires a manager to stop a meeting in progress to open the door for an employee. In fact, other members of management acted in the same way (delaying an employee's entry into the building temporarily for about two to three minutes).

45.     Mr. Hutchings spent a few short minutes wrapping up the last few talking points and concluded the meeting. When Mary entered the building, she did so in an aggressive and emotionally charged manner that was hot tempered and angry. Mr. Hutchings created some distance to allow space while she cooled down. Ms. Dumas was fuming and highly emotional and explained that she could no longer work her shift. Mr. Hutchings could see that Mary was very upset and supported Mary's request to leave for the day.

46.     In a particularly vicious and hateful personal attack, Ms. Dumas weaponized Jude's sex and gender referring to Plaintiff Jude Hutchings as a "He, She, Whatever!"

47.     An investigation was initiated and jointly handled by Mr. Boles and Mr. Karnatz, in response to Ms. Dumas and other complaints by employees. A number of the complaints contained second-hand account of the incident contained false allegations and, falsely accused that Mary was waiting outside for ten (10) minutes, and wildly inflammatory subject matter.

48.     Ms. Dumas and other employees communicated with one another, some through text messages or other forms of digital communications.

49.     As part of the investigation, Mr. Boles obtained surveillance footage of the event. Mr. Boles and Plaintiff watched the video together – confirming that Ms. Dumas was not outside for 10 minutes. Mr. Boles acknowledged that he conducted meetings in the same way, at other stores "I've had people wait while I finished a meeting too." B&N has no written policy regarding

this matter, and other members of management, including Michael Dunworth, Joe Case, and Daniel Boles, have lead morning staff meetings similarly. Mr. Boles expressed that the worst outcome would be a formal coaching opportunity through an IP. Jude acknowledged that Mary was upset and wanted to express an apology.

50.     In the days that followed, on November 19, 2019, Mr. Boles became the target of discipline – just like Mr. Hutchings. Mr. Boles was disciplined through a formal IP warning, while Mr. Hutchings got fired. In comparison, Jude has zero (0) formal written IP warnings.

51.     Protocol towards separating an employee is to discipline in writing, via IP.

52.     At least two similarly situated employees have multiple formal written IP warnings.

53.     On Nov. 19, 2019, at about 1:17 PM, Plaintiff Jude Hutchings called Defendant's HR number (800) 799-5335 to tell HR that Jude's husband received his pre-approval letter for gender-affirming care, but the wrong name was still listed on medical records under Defendant's plan. HR instructed him to fax a copy of certain documents, including a court order, to the HR department and the name would be updated in the records. He complied, using Store 2200's on-site fax machine.

54.     About five hours later, Jude was fired.  About 6:30 PM, Mr. Karnatz asked Jude to join him in the office. Mr. Karnatz informed Jude that he was being fired.

55.     Mr. Karnatz refused to disclose the reason in writing and neglected to use Defendant's official separation form.

56.     Mr. Karnatz expressed that there was an investigation, and that it is (1) in the best interest of the store and (2) best interest of the company to fire Jude.

57.     .Mr. Karnatz informed Mr. Hutchings of his termination and was being fired for (1) violating a company policy by delaying Ms. Dumas entry into the building, lacked empathy. He continued by citing the fact that (2) Mr. Hutchings was late to work on November 14, 2019.

58.     Mr. Karnatz expressed that "nobody I interviewed said that it came across as malicious or intentional."

59.     Jude protested the decision, and he understood that he was being treated differently. Jude referred to the Receiving Manager was treated with preference.

60.     At least two similarly situated employees have numerous (A) less formal verbal counseling discussions, and (B) formal written IP warnings. The Receiving Manager has at least three (3) verbal warnings in the Verbal Counseling Log and was late to work on Nov. 14, 2019.

61.     The timing of Mr. Hutching's termination with no warning is no coincidence.

62.     On November 20, 2019, Jude Hutchings met with his doctor in accordance with his ongoing care for gender dysphoria.

63.     In the weeks that followed, Defendant made written disclosures to the Texas Workforce Commission. For example, on or about December 9, 2019, Defendant listed the final incident as 11-19-19. The final incident section reads that Jude was fired for a single reason, "Claimant was separated after making a decision that was not consistent with company policy." The decision that Mr. Hutchings made on 11-19-19 was to call the company's HR hotline regarding name misuse on the medical records.

64.     Five hours after calling HR, Mr. Hutchings was fired; Regional Director of HR, Joe Case, is one of the decision-makers that fired Jude. Mr. Case had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

65.     Mr. Karnatz was a decision-maker in Jude's termination. Mr. Karnatz had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

66.     Jude was fired within a week after receiving written notice that gender-affirming medical care for GD was pre-approved for Jude's husband, Kai Hutchings. Both were covered under a medical benefits plan offered through Jude's employment at B&N. B&N's medical plan is self-funded and pays for the significant costs of gender affirming surgeries to treat GD.

67.     Defendant's medical plan requires a long list of documentation and other requirements to qualify for gender reassignment surgery, including continuous cross-sex hormone

therapy appropriate for the desired gender for at least 12 months. Expert medical treatment for GD and gender-reassignment surgery can total hundreds of thousands of dollars.

68.    Defendant's medical plan is self-funded and allows for unlimited cost of reassignment surgery.

69.    Both Plaintiff and his partner were covered under B&N's benefits plan, including medical care through B&N's transgender-inclusive benefits plan. Medical bills to treat gender dysphoria involve hundreds of thousands of dollars and B&N prides itself for offering generous benefits that have no monetary limit for gender-affirming surgeries.

70.    Weeks later, on December 10, 2019, Mr. Karnatz was contacted by a prospective employer for Plaintiff Jude Hutchings; Mr. Karnatz issued a glowing recommendation.

71.    On December 18, 2019, Texas Workforce Commission mailed a determination letter, "Our investigation found that some of your actions on the job may have been considered misconduct. However, the incident your employer fired you for was not considered misconduct in the work."

72.    After Plaintiff was fired, not only was he financially and spiritually devastated, access to medically-necessary benefits through B&N's transgender-inclusive benefits were stripped away – impacting both Plaintiff and his spouse in long lasting and permanent ways. Each have been robbed of years of their lives, suffered massive losses, and experienced significant hardships – including having to travel thousands of miles to obtain out of state expert medical care and treatment for gender dysphoria.

## VI.    COUNT ONE: FIRST CAUSE OF ACTION
### (Title VII Discrimination)

73.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74.     Title VII of the Civil Rights Act of 1964 provides that an employer or agent thereof may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

75.     Plaintiff is a member of a protected category with regard to sex.

76.     Plaintiffs are transgender men.

77.     Plaintiff was qualified to perform the job for which he was employed by Defendant.

78.     At all relevant times hereto, Jude was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

79.     Plaintiff was terminated on November 19, 2019.

80.     Defendant's investigation by Mr. Karnatz found the alleged misconduct on November 14, 2019, was unintentional; on November 19, 2019, at about 7:00 p.m., Mr. Karnatz disclosed to Plaintiff "nobody I interviewed said that it came across as malicious or intentional."

81.     Defendant, through management and Mr. Case, knew of Plaintiff's administration prescription medication (testosterone) and the means of administrating thereof. Certain adverse effects from testosterone therapy have physiological effects, including worsening sleep apnea, brain fog, and aggression.

82.     Defendant supplied a single reason for termination to the Texas Workforce Commission, "Claimant was separated after making a decision that was not consistent with company policy." The reason disclosed to the Texas Workforce Commission pertained to delaying Ms. Dumas' entry into to the building for a few minutes.

83.     As outlined above, Defendant violated Title VII when it discriminated against Jude by firing him for engaging in the same conduct as other members of management.

84.     Other members of management have conducted meetings in the same way. Defendant has no written policy that gives managers guidance or clear expectations of how to conduct meetings. Delaying an employee's entry to the building is not a violation of protocol since other members of management have conducted meetings in the same or similar ways. Other senior employees, including Regional Director of HR Joe Case and Store Manager Michael Dunworth,

led by their example by conducting meetings in substantially similar ways (delaying an employee's entry into the building for a few short minutes).

85.     Jude was treated differently because other employees are guilty of the same conduct but were not fired for engaging in the same conduct. Unlike the others, Jude was swiftly fired with no warning and no written formal IP. Jude has a clean record with zero (0) formal IP warnings. Other employees, including Store Manager Daniel Boles, are guilty of the same conduct. Employees, including Store Manager Daniel Boles, have multiple formal written IP warnings.

86.     Plaintiff's discharge for misconduct was made as a pretext for discrimination because of sex.

87.     As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Jude has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Jude is entitled to an award of damages, attorney's fees, and costs.

88.     Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Jude's federally protected rights, for which Jude is entitled to an award of punitive damages.

## VII.     COUNT TWO: SECOND CAUSE OF ACTION
### (Title VII Harassment)

89.     Plaintiff Jude Hutchings alleges and incorporates by reference the allegations in the preceding paragraphs.

90.     Plaintiff is a member of a protected category with regard to sex.

91.     Plaintiffs are transgender men.

92.     At all relevant times hereto, Jude was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

93.     As outlined above, Defendant violated Title VII when it subjected Jude to a hostile work environment because of Jude's gender identity.

94.     Defendant's Employee Handbook defines harassment as "unwelcome conduct which has the effect of creating an intimidating, offensive, or hostile work environment."

95.     Many of the events contributing to the hostile environment occurred within the 300-day period prior to Plaintiff's EEOC charge.

96.     Defendant is liable for the harassment that Jude was subjected to during the course of Jude's employment with Defendant because he reported his concerns to Defendant and Defendant failed to take prompt remedial action.

97.     Plaintiff was subjected to chronic name and gender misuse, dating back for several years leading to Plaintiff Jude Hutchings termination.

98.     After Plaintiff's coworkers were informed of his male gender and male gender expression, Defendant refused to update corporate records in accordance with the June 18, 2018, Travis County, Texas, court order which changed Plaintiff Jude Hutchings' name and gender identifiers.

99.     B&N claimed that they complied with Plaintiff's name update on or about March 29, 2019 – nearly 10 months after the court order was issued. However, B&N falsely declared that they updated Plaintiff's name in all systems after the court order was produced.

100.    As recently as July 30, 2020, and in anticipation of litigation, Plaintiff's accessed B&N systems to download historical pay data, including his pay stub records; B&N's online portal still showed the wrong name even 8 months after Plaintiff was fired.

101.    Chronic name and gender misuse are unwelcome to Plaintiff and created an environment that was hostile.

102.    Plaintiff's name and gender misuse was frequent, severe, pervasive, and threatening.

103.    Defendant's employees misused Plaintiff Jude Hutchings name and gender verbally.

104.     But for Plaintiff's gender, he would not have been subjected to chronic name and gender misuse.

105.     Defendant employees misused Plaintiff Jude Hutchings name in writing, from 2018 to July 2019. Mr. Hutchings' former first name appeared on daily membership reports that were disseminated digitally and even published in the breakroom. This lasted until July 2019 when Defendant finally updated Mr. Hutchings name in corporate records.

106.     An employee confronted Plaintiff to discuss Plaintiff's sex in late September 2019. Kim Segura asked insensitive questions about Plaintiff's sex as female and gender identity as male. Plaintiff's sex and gender identity was a topic of conversation with "the boys." Plaintiff Jude Hutchings reported the matter to Mr. Karnatz.  Mr. Karnatz "What do you want me to do about it? Keep people from talking?" Mr. Karnatz had a compulsory obligation to report the incident and initiate an investigation, but failed to do so.

107.     Defendant's disciplinary policies were not followed consistently and selectively enforced.

108.     Plaintiff Jude Hutchings had a perfect record, devoid of any formal IP disciplinary actions.

109.     In the days leading to Plaintiff's sudden firing, and on November 14, 2019, employee Mary Dumas referred to Plaintiff as a "He, She, Whatever!" in a manner that was not only unwelcome but had an effect of creating an intimidating, offensive, or hostile environment. Just like Mr. Karnatz' and management's selective enforcement actions,  turned a blind eye to the September 2019 incident with Kim Segura, Ms. Dumas was not disciplined for violating Defendant's policy regarding empathy and respect in the workplace.

110.     As a direct and proximate result of Defendant's harassing conduct in violation of Title VII, Jude has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, depression,

humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering, for which Jude is entitled to an award of damages, attorney's fees, and costs.

111.    Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton

violations of Jude's federally protected rights, for which Jude is entitled to an award of punitive

damages.

**COUNT THREE: THIRD CAUSE OF ACTION**

**(Title VII Retaliation)**

112.    Jude incorporates by reference the allegations in the preceding paragraphs.

113.    At all relevant times hereto, Jude was an "employee" within the meaning of Title

VII, and Defendant was an "employer" within the meaning of Title VII.

114.    As outlined above, Defendant violated Title VII when it retaliated against Jude by

firing him within 60 days of his harassment complaint to Mr. Karnatz because Plaintiff engaged

in activity protected by Title VII.

115.    Plaintiff's exercise of protected rights was known to Defendant.

116.    Jude reported the harassment to Store Manager Daniel Karnatz, but his concerns

were ignored. Mr. Karnatz brushed off Jude's concerns and said, "What do you want me to do

about it, Jude? Stop people from talking?" Approximately 3 weeks later, on or about October 17,

2019, Jude was instructed to train a newly-hired employee, Brittany Bookout, as Assistant Store

Manager. Jude was fired about 1 month later.

117.    Following Plaintiff Jude Hutchings Title VII protected conduct, Plaintiff was

subjected to a hostile work environment and subjected to tangible or adverse employment actions,

i.e., his termination.

118.    On November 19, 2019, at about 1:17 PM, Plaintiff Jude Hutchings called

Defendant's HR number (800) 799-5335 to tell HR that his husband received his pre-approval

letter for gender-affirming care, but the wrong name was still listed on medical records under

Defendant's plan. HR instructed Jude to fax a copy of certain documents, including a court order,

to the HR department and the name would be updated in the records. Plaintiff Jude Hutchings

18

complied, using Store 2200's on-site fax machine. Five hours later, he was fired. On or about December 9, 2019, Defendant listed the final incident that caused 11-19-19. The final incident section reads that Jude was fired for a single reason, "Claimant was separated after making a decision that was not consistent with company policy." The decision that Mr. Hutchings made on 11-19-19 was to call the company's HR hotline to complain about name misuse on Defendant's medical plan.

119.    By engaging in the conduct described above, Defendant intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff Jude Hutchings federally protected rights.

120.    As a direct and proximate result of Defendant's retaliatory conduct in violation of Title VII, Jude has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Jude is entitled to an award of damages, attorney's fees, and costs.

121.    Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Jude's federally protected rights, for which Jude is entitled to an award of punitive damages.

## IX.

## COUNT FOUR: FOURTH CAUSE OF ACTION

**(Discrimination under the Americans with Disabilities Act / Failure to Accommodate)**

122.    Jude hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

123.    Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employee, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

124.    Plaintiff was a qualified individual with disabilities, including gender dysphoria and sleep apnea.

125.    Defendant was aware of gender dysphoria.

126.    Defendant was aware of sleep apnea.

127.    Defendant had a record of Plaintiff's disabilities.

128.    Defendant was aware of invasive medical treatment for gender dysphoria, as evidenced by the March 12, 2018, meeting that Mr. Dunworth and Mr. Case disclosed that Plaintiff was going through a regiment of injections and things like that.

129.    Defendant regarded Plaintiff as having these disabilities.

130.    Since 2017 through the present, Jude has been seeking disability treatment for GD.

131.    Jude's condition has substantially limited major life activities including

132.    Jude was qualified as "disabled" pursuant to the ADA because he was actually impaired as described in 42 U.S.C. § 12102(1)(A).

133.    Defendant and employees degraded, humiliated, invalidated, and mentally devastated Jude every time employees or the corporation misnamed or misgendered Jude. He was chronically mis-named by employees, and then chronically mis-gendered by Defendant employees from March 2018 until November 2019.

134.    Jude requested reasonable accommodations for treatment of GD.  Jude notified Defendant, and requested that employees use the correct pronouns "he" and "him." Plaintiff requested Defendant and employees call him by his name, "Jude." Plaintiff supplied a court order to Defendant, which Defendant refused to fully comply with. Defendant failed to provide adequate training to all of its employees at Store 2200.

135.    In the days leading up to his termination, one employee referred to Jude as a "He, She, Whatever!"

136.    At all relevant times, Plaintiff was qualified to perform the essential duties of the Assistant Store Manager position with the requested reasonable accommodation.

137.     Defendant did not make a good faith effort to accommodate Jude's disability, including failing to update corporate records in accordance with June 18, 2018, Travis County, Texas, court order.

138.     All the accommodations that Jude requested were reasonable in nature.

139.     None of the accommodations that Jude requested would have created undue hardship for Defendant.

140.     Defendant failed to communicate with Plaintiff meaningfully and in good faith concerning his disability and requested accommodations.

141.     Defendant discriminated against Jude in violation of the ADA by refusing to accommodate his disability.

142.     Defendant knowingly and intentionally discriminated against Jude because of his disability.

143.     Under the legal theory respondeat superior, Defendant is liable for the acts and omissions of its agents and employees.

144.     Jude suffered injuries as a result of Defendant's failure to reasonably accommodate his disability.

145.     Defendant's failure to accommodate Jude's disability was the direct and proximate cause of his injuries, damages, and losses.

146.     Defendant fired Plaintiff because of Plaintiff's disabilities, because of the record of these disabilities, or because it regarded Plaintiff as disabled.

147.     Defendant acted with malice or reckless indifference to Plaintiff Jude Hutching's federally protected rights under the ADA when it refused to provide a reasonable accommodation for his disability.

## X.

### COUNT FIVE: FIFTH CAUSE OF ACTION

### (Retaliation under the Americans with Disabilities Act)

148.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

149.    Plaintiff engaged in protected activity when he opposed a discriminatory practice.

150.    On November 19, 2019, when Mr. Kanatz was firing Plaintiff Jude Hutchings, Mr. Hutchings protested his termination as discriminatory.

151.    Plaintiff was treated differently than Receiving Manager, Joseph Lawrence Swarts.

152.    Plaintiff was treated differently than Store Manager, Daniel Health Boles.

153.    Mr. Swarts and Mr. Boles are similarly situated to Assistant Store Manager, Plaintiff Jude Hutchings.

154.    Mr. Boles is guilty of the same conduct that resulted in Plaintiff's termination.

155.    Plaintiff engaged in protected activity when he opposed a discriminatory practice.

156.    On Nov. 19, 2019, at about 1:17 PM, Plaintiff called Defendant's HR number (800) 799-5335 regarding a medical pre-approval letter that listed the wrong name for treatment of Plaintiff Kai Hutchings disability care under GD.

157.    As a direct result of Plaintiff's complaints and opposition to conduct prohibited by the ADA, Defendant retaliated against Plaintiff by terminating Plaintiff Jude Hutchings employment shortly thereafter.

158.    Defendant treated Plaintiff Jude Hutchings less favorably than his similarly situated counterparts who did not protest discriminatory practices.

159.    Daniel Health Boles, protested the disparate treatment of Plaintiff Jude Hutchings with management and was subsequently punished by a formal disciplinary action through a written IP.

160.    Although Mr. Boles and Plaintiff Jude Hutchings protested the discriminatory practice of treating employees differently under disciplinary methods, Mr. Boles reaped the benefit of a written IP.

161.     Defendant intimidated, threatened, and/or interfered with Plaintiff in the exercise and enjoyment of his rights under the ADA by weaponizing his name and gender, and then ending employment.

162.     As outlined above, Defendant violated ADA when it discriminated against Plaintiff by firing him for conduct that other employees were not fired over. Plaintiff was treated differently because other employees are guilty of the same conduct but were not fired for engaging in such conduct.  In contrast, Plaintiff was swiftly fired with no warning and no written formal IP. Other employees, including Store Manager Daniel Boles, are guilty of the same conduct. Other employees, including Store Manager Daniel Boles, have multiple formal written IP warnings. Plainitff has zero. Therefore, the reason Plaintiff was fired is a pretext for ending employment because of Plaintiff's disability, GD.

163.     Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused him injuries, damages, and losses.

164.     Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

165.     Defendant's conduct was with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## XI.

## COUNT SIX: SIXTH CAUSE OF ACTION

### (Retaliation under Employee Retirement Income Security Act § 510)

166.     The allegations contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

167.     It is unlawful for Defendant "to discharge, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan…." 29 U.S.C. § 1140.

168.    Jude was qualified for his job as an Assistant Store Manager.

169.    Plaintiff Jude Hutchings was discharged by Defendant.

170.    Jude meets the statutory definition of "participant" 29 USC § 1002(7) since he was employed as an Assistant Store Manager by Defendant.

171.    Plaintiff Kai Hutchings meets the statutory definition of "beneficiary" 29 USC § 1002(8) since he was designated by a participant.

172.    Plaintiff Jude Hutchings was eligible to receive benefits from Defendant's medical plan.

173.    Plaintiff Kai Hutchings was eligible to receive benefits from Defendant's medical plan.

174.    Defendant's medical plan includes treatment for GD.

175.    Defendant's medical plan is self-funded.

176.    Plaintiff Jude Hutchings was receiving treatment for GD under Defendant's medical plan.

177.    Plaintiff Kai Hutchings was receiving treatment for GD under Defendant's medical plan.

178.    Plaintiff was seeking benefits and was entitled to benefits under Defendant's medical plan, which allows for unlimited cost of gender-affirming care, including gender-affirming surgeries.

179.    Plaintiff Jude Hutchings was discriminated against by Defendant for exercising his rights for GD treatment under Defendant's medical plan.

180.    Plaintiff Jude Hutchings was discriminated against by his association to Plaintiff Jude Hutchings for exercising rights for GD treatment under Defendant's medical plan.

181.    On August 19, 2019, Plaintiff Jude Hutchings gave advanced notice of his intention to take request a single day off from work scheduled on November 20, 2019. Plaintiff wrote in the comments box, "Doctor appointment."

182.    Doctor appointments are covered under Defendant's medical plan.

183.    Plaintiff Jude Hutching's medical treatments for GD were covered benefits under Defendant's medical plan.

184.    Defendant's management knew of Plaintiff's doctors appointment since it was referenced in the request for time off.

185.    Defendant fired Plaintiff within one (1) day of his scheduled doctor's appointment with his endocrinologist on November 20, 2019.

186.    Defendant fired Jude in close temporal proximity between pre-approvals of gender-affirming care for GD.

187.    Defendants reason for terminating Plaintiff Jude Hutchings was a pretext to interfere with medical benefits to treat ongoing medical treatment for GD.

188.    Defendant's reason for terminating Plaintiff Jude Hutchings was a pretext to interfere with benefits, as evidenced by Mr. Karnatz glowing recommendation of Plaintiff Jude Hutchings when Mr. Karnatz was contacted by a prospective employer on December 10, 2019.

189.    Defendant's justification for ending employment with Plaintiff Jude Hutchings is a pretext because there is no written policy, oral or written or otherwise documented, as referenced above.

190.    Defendant terminated Plaintiff to avoid paying benefits in which the Plaintiffs were entitled to, through Plaintiff Jude Hutchings continued employment.

191.    Notice of eligibility of benefits for Plaintiff Kai Hutchings gender-affirming surgery is dated November 7, 2019.

192.    Notice of pre-approval was received during the week of November 11, 2019.

193.    On November 13, 2019, at 10:55 PM, Jude submitted a request for time off. He wrote in the comments box, Medical care in Austin with my husband.

194.    Defendant's actions are discriminatory since Store 2200's Store Manager, engaged in the same conduct that resulted in Plaintiff's sudden firing with no written warning.

195.    Plaintiff has a clean record, and as no record of formal IP warnings; this is unlike similarly situated employees guilty of the same conduct.

196.    Defendant treated Jude differently because the Store Manager, Daniel Boles, is guilty of the same conduct but was not immediately fired.

197.    Defendant had a significant financial motive for ending employment with Jude, because the medical plan allows for unlimited cost of gender-affirming care. Gender-affirming care for both Plaintiffs, including surgeries, cost hundreds of thousands of dollars.

198.    When Mr. Karnatz fired Jude on November 19, 2019, he said it is in the best interest of both (1) the store and (2) the company to part ways.

199.    Defendant had a significant non-financial motive for ending employment with Plaintiff, because management expressed accommodations are a hassle and a challenge to deal with, and burdensome to the business in terms of scheduling on the calendar.

200.    Defendant had a significant financial motive for ending employment with Plaintiff, because various costs associated with time are financed through the store budget.

201.    Store 2200 had a motive to fire Plaintiff Jude Hutchings since accommodations were a hassle and burdensome to the business in terms of scheduling on the calendar and financially to the budget.

202.    Defendant had a motive to fire Plaintiff Jude Hutchings since the cost for ongoing GD treatment is costly.

203.    Regional Director of Human Resources, Joe Case, is one of at least three decision-makers that chose to fire Plaintiff Jude Hutchings.

204.    Mr. Case had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

205.    Store 2200 was under scrutiny because the store has a history of not meeting budgetary goals.

206.    Maintaining budgetary goals are factors in Defendant's annual performance review for employees.

207.    Members of management for Defendant have performance incentives that are proximate to meeting budgetary goals.

26

208.    Defendant's fired Plaintiff Jude Hutchings for exercising gender-affirming care, offered through Defendant's medical plan in which both Plaintiffs are entitled to.

209.    Plaintiffs are seeking all available damages, including other appropriate equitable relief under ERSIA § 502(a)(3) (29 U.S.C. § 1132(a)(3).

# XII.

## COUNT SEVEN: SEVENTH CAUSE OF ACTION

### (Interference under Employee Retirement Income Security Act § 510)

210.    The allegations contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

211.    It is unlawful for Defendant "to discharge, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan…." 29 U.S.C. § 1140.

212.    Plaintiff Jude Hutchings was discharged by Defendant.

213.    Plaintiff Jude Hutchings was a beneficiary under Defendant's medical plan.

214.    Defendant's medical plan is an employee benefit plan.

215.    Defendant's medical plan is self-funded.

216.    Jude meets the statutory definition of "participant" 29 USC § 1002(7) since he was employed as an Assistant Store Manager by Defendant.

217.    Plaintiff Kai Hutchings meets the statutory definition of "beneficiary" 29 USC § 1002(8) since he was designated by a participant.

218.    Plaintiff Jude Hutchings exercised rights and benefits under the medical plan, by seeking future treatment for gender dysphoria under the provisions of an Defendant's employee benefit plan.

219.    Plaintiff Kai Hutchings exercised rights under the medical plan, by seeking treatment for GD. Kai's pre-approval letter was issued on November 7, 2019, and then received the hard copy notice of pre-approval via mail on or about November 11, 2019.

220.    Plaintiff Kai Hutchings future treatment was arranged for January 2020.

221.    Because Defendant's plan is self-funded, there is a substantial financial motive to end employment before more expensive surgeries are completed.

222.    Daniel Karnatz expressed employees, particularly those with disabilities, were burdensome to accommodate on the store's schedules.

223.    Treatment for gender dysphoria requires significant resources.

224.    When Mr. Karnatz fired Jude on November 19, 2019, he said it is in the best interest of both (1) the store and (2) the company to part ways.

225.    Store 2200 had a motivation to part ways with Jude, since there are various costs for accommodating leaves, including the efforts to accommodate complicated work schedules, time off requests, and.

226.    The company had a financial interest in firing Plaintiff Jude Hutchings, since Defendant's medical benefits plan had no monetary limit for gender-affirming care, including surgeries that cost hundreds of thousands of dollars.

227.    Jude's his termination resulted in a substantial savings in benefit expenses.

228.    Daniel Karnatz, the Store Manager, was a decision-maker in Jude's termination. Mr. Karnatz had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

229.    Regional Director of Human Resources, Joe Case, is one of the decision-makers that fired Jude. Mr. Case had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

230.    Jude submitted two (2) requests for time off to seek treatment for disability, GD. Jude scheduled a request for time off for one day for a "Doctor appointment" scheduled for November 20, 2019. Defendant fired Jude on November 19, 2019, just 1 day shy of the doctor

appointment. Jude submitted a request for time off on November 13, 2019, at 10:55 PM, for nine (9) affected days for "Medical care in Austin with my husband."

231.    Defendant fired Plaintiff Jude Hutchings to interfere with the attainment of Plaintiff Jude Hutching's right of future benefits for GD.

232.    Defendant fired Plaintiff Jude Hutchings to interfere with the attainment of Plaintiff Kai Hutching's right to future benefits for GD.

233.    Plaintiffs are seeking all available damages, including other appropriate equitable relief under ERSIA § 502(a)(3) (29 U.S.C. § 1132(a)(3).

## XIII.
### COUNT EIGHT: EIGHTH CAUSE OF ACTION
### (Retaliation under Family and Medical Leave Act)

234.    The allegations contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

235.    Director of Human Resources, Joe Case, is one of the decision-makers that fired Jude. Mr. Case had knowledge of Jude's treatment of disability, GD, and invasive treatments for Jude's gender-affirming care.

236.    Jude was employed by Defendant.

237.    Jude engaged in a protected activity when he submitted a request for time off through Defendant's online portal on November 13, 2019, at 10:55 PM. He wrote in the comments box, "Medical care in Austin with my husband." Jude gave advanced notice that he needed nine (9) days off in January 2020.

238.    Jude followed policies in the Employee Handbook regarding time off requests and advanced notice requirements.

239.    Defendant took adverse action against Jude when he was fired on November 19, 2019.

240.   A causal link exists between Jude's request for time off and his termination just five days later.

241.   Members of management, including Mr. Daniel Karnatz, expressed animosity towards employees who required accommodations for the store's schedules. Mr. Karnatz described scheduling accommodations as a hassle, difficult to manage, and burdensome.

242.   Defendant supplied a single reason for termination to the Texas Workforce Commission, "Claimant was separated after making a decision that was not consistent with company policy."

243.   Defendant's decision to fire Plaintiff is pretext to hide retaliation because other employees guilty of the nearly identical conduct (delaying an employee's entry into the building for a few short minutes while a meeting concluded).

244.   Defendant has no written policy that requires a manager to interrupt a meeting in progress.

245.   Jude was treated more harshly since other members of management have conducted meetings in the same manner.

246.   When Jude was fired, Daniel Karnatz referenced that Jude was late to work on November 14, 2019. Numerous other employees were late to work on the same morning.

247.   Jude had a perfect record of never being written up through a formal disciplinary action through a written Improvement Plan ("IP"); other members of management have formal disciplinary actions and remained employed.

## XIV.
### COUNT NINE: NINETH CAUSE OF ACTION
### (Interference of Benefits under Family and Medical Leave Act)

248.   The allegations contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

249.   Plaintiff is an eligible employee.

250.     Defendant is a covered employer, subject to FMLA requirements.

251.     Plaintiff was employed by Defendant for at least 12 months, worked at a location where 50 or more employees work at that location, and worked for at least 1,250 hours during the 12 months prior to the start of leave.

252.     Plaintiff took FMLA leave on at least one prior occasion and was encouraged by Defendant's HR department to exhaust his vacation time or request for time off of FMLA leave.

253.     Plaintiff followed Defendant's policies regarding time off by giving advanced notice.

254.     On August 19, 2019, Plaintiff gave notice of his intention to take FMLA leave when he submitted a request for time off scheduled on November 20, 2019. Plaintiff wrote in the comments box, "Doctor appointment."

255.     Defendant denied benefits to which he was entitled under FMLA leave, when the company fired him on November 19, 2019 - just 1 day before his scheduled leave for a doctor appointment.

256.     Defendant's decision to fire Plaintiff was a pretext because other employees guilty of the nearly identical conduct were treated with more leniency by reaping the benefit of a formal IP warning rather than swift and immediate termination.

257.     On November 13, 2019, at 10:55 PM, Plaintiff submitted a request for time off. Plaintiff wrote in the comments box, "Medical care in Austin with my husband." Defendant denied benefits to which he was entitled under FMLA leave, when the company fired him on November 19, 2019 - just 5 days after Plaintiff gave notice that he needed nine (9) days off in January 2020.

## XV.

### PRAYER FOR RELIEF

258.     For the above reasons, Plaintiffs ask that Defendants be cited to appear and answer herein, and that upon trial on the merits, Plaintiffs be awarded compensatory and punitive damages as alleged and/or proved at trial, together with attorney's fees, if allowed, pre-and post-judgment

interest at the maximum lawful rate, costs of court, and such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

## XVI.

### JURY DEMAND AND REQUEST FOR ATTORNEY'S FEES

259.    Plaintiff's demand a jury trial and request attorney's fees if permitted by law or equity.

.

Respectfully submitted,

/s/ *Gregg M. Rosenberg*
Gregg M. Rosenberg
USDC SD/TX No.: 7325
TEXAS STATE BAR ID 17268750
ROSENBERG & ASSOCIATES
33518 TRAVIS STREET, SUITE 200
HOUSTON, TEXAS 77002

ROSENBERG & ASSOCIATES
3518 TRAVIS STREET, SUITE 200
HOUSTON, TEXAS 77002
Telephone Number 713-960-8300
Facsimile Number 713-621-6670

ROSENBERG & ASSOCIATES
3518 TRAVIS STREET, SUITE 200
HOUSTON, TEXAS 77002
Telephone Number 713-960-8300
Facsimile Number 713-621-6670

*/s/Thomas N. Hutchings*
**Thomas N. Hutchings**
**(Motion for Pro Hac Vice Pending)**
Oquirrh Mountain Legal, PLLC
2901 Bluegrass Boulevard
Second Floor, Suite #17
Lehi, Utah 84043
Telephone: 801.897.5636
Facsimile: 385.743.2914
Email: Thomas.Hutchings@OQUI.Law

ATTORNEYS FOR PLAINTIFFS